IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN HAYDEN BLANKENSHIP, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. CIV-22-00958-PRW |
| JOHN KEVIN STITT, *et al.*, | ) ) ) ) |
| Defendants. | ) |

# ORDER

Before the Court are four Motions to Dismiss filed by Defendants Scott Crow, Ross Fisher, Janna Morgan, and the Oklahoma Department of Corrections (collectively, the "DOC Defendants") (Dkt. 32), Defendant Governor Kevin Stitt (Dkt. 37), Defendant State of Oklahoma, *ex rel.*, Oklahoma Pardon and Parole Board (the "Parole Board") (Dkt. 47), and Defendants Adam Luck, Kelly Doyle, C. Allen McCall, and Larry Morris (collectively, the "former Parole Board member Defendants") (Dkt. 48).[1] Plaintiffs responded to all four motions (Dkts. 51, 53, 56, 57), and Defendants replied respectively (Dkts. 54, 55, 58, 59). For the reasons given below, the Court **GRANTS** Defendants' Motions to Dismiss (Dkts. 32, 37, 47, 48).

---

[1] The Court refers to the Defendants that have filed these motions collectively as "Defendants." This Order does not apply to any of the other Defendants in this case.

1

## *Background*[2]

This case arises from three murders committed by Lawrence Paul Anderson on February 9, 2021, just after being released from prison. Prior to the murders Anderson was in the custody of the Oklahoma Department of Corrections serving sentences for a variety of crimes. On January 17, 2019, Anderson applied to the Oklahoma Pardon and Parole Board ("the Parole Board") for a commutation of his sentences. On July 18, 2019, the Board denied the commutation request by a vote of 3 to 2. Anderson then re-applied for commutation on August 8, 2019. Pursuant to the Parole Board's rules, Anderson's recently denied application rendered him ineligible to re-apply for commutation.[3] On October 9, 2019, the Parole Board voted unanimously to advance Anderson's application to January 2020. On December 12, 2019, the Parole Board issued an Investigative Determination Report on Anderson's August 2019 application, indicating he had made no previous applications for commutation.

In January 2020, the Parole Board recommended that Anderson's sentence be commuted to nine years. Oklahoma Governor Kevin Stitt approved the commutation on June 16, 2020, to be effective June 23, 2020. Anderson was released on January 18, 2021.

---

[2] At this stage in the proceedings, the Court accepts Plaintiffs' well-pleaded allegations as true. This factual background reflects Plaintiffs' account.

[3] Okla. Admin. Code § 515:15-15-1 ("An Applicant may reapply after an unfavorable recommendation: 1) upon recommendation from the Governor; 2) if there has been a statutory change in the penalty for the crime; or, 3) three years from the last date of denial."). There is no indication that the Governor recommended Anderson's commutation or that there was a statutory change to the penalty of any of Anderson's crimes of conviction.

Three weeks later, on February 9, 2021, he murdered Andrea Lynn Blankenship, Leon W. Pye, and K.W.R.P.

From November 2, 2021, through May 12, 2022, Oklahoma County convened a Grand Jury to hear evidence on the events that led to Anderson's commutation. On May 12, 2022, the Oklahoma County Grand Jury publicly filed a Final Report on their investigation which stated, "[i]t appears that these three deaths could have been avoided, had the [Parole] Board rules and the applicable law been followed."[4] The Final Report further stated that, according to testimony presented to the Grand Jury:

> At least one high level member of the [Parole Board] administrative staff became aware of the Anderson case being docketed [within the three-year period] in error. The discovery was made at a time when it could have been easily corrected. However, a unilateral decision was made by one person not to bring the error to the attention of the Board or the Governor's office. This failure to immediately bring the error to the Board's attention prevented the Board from correcting the error before the case went to the Governor for approval. Failure to notify the Governor immediately of this error also prevented the Governor's office from denying the recommendation to commute Anderson's sentence.[5]

Plaintiffs' Amended Complaint (Dkt. 2) asserts two causes of action against Defendants. The first is made pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiffs' Fourth, Eighth, and Fourteenth Amendment rights under the United States Constitution. The second is made pursuant to the Oklahoma Governmental Tort Claims Act for alleged violations of state law. All claims are made against Defendants in both their official and individual capacities.

---

[4] Pls.' Am. Compl. (Dkt. 2) ¶ 79(j).

[5] *Id.* at ¶¶ 6, 79(m).

*Legal Standard*

When reviewing a Rule 12(b)(6) motion to dismiss, "[a]ll well-pleaded facts, as distinguished from conclusory allegations,"[6] must be accepted as true and viewed "in the light most favorable to the plaintiff."[7] Parties bear the "obligation to provide the grounds of [their] entitle[ment] to relief," which requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[8] The pleaded facts must be sufficient to establish that the claim is plausible.[9] In considering whether a claim is plausible, the Court "liberally construe[s] the pleadings and make[s] all reasonable inferences in favor of the non-moving party."[10] Generally, a complaint will survive a Rule 12(b)(6) motion to dismiss if it "state[s] a claim to relief that is plausible on its face," meaning that it pleads sufficient facts to support a "reasonable inference that the defendant is liable for the misconduct alleged."[11]

---

[6] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

[7] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted) (alteration in original).

[9] *See id.*

[10] *Brokers' Choice of Am., Inc.*, 861 F.3d at 1105.

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

*Discussion*

I.  *Section 1983*

To assert a claim under § 1983, a plaintiff must show (1) that a right secured by the Constitution and laws of the United States was violated and (2) that a person acting under color of state law deprived the plaintiff of the right.[12] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[13]  This authority may be either "actual or apparent,"[14] and "[w]hether a defendant acted under color of state law is a mixed question of fact and law."[15]

Plaintiffs allege violations of their Fourth, Eighth, and Fourteenth Amendment rights. The Fourth Amendment protects individuals against unreasonable searches or seizures by state actors,[16] and the Eighth Amendment protects against excessive bail, excessive fines, or cruel and unusual punishments of those convicted of crimes.[17] Plaintiffs do not attempt to explain what government action could have plausibly violated the Fourth Amendment nor do they identify any Eighth Amendment right that these Plaintiffs possibly held (they weren't fined, they weren't subject to bail, and they weren't convicts subject to

---

[12] *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009).

[13] *Jojola v. Chavez*, 55 F.3d 488, 492–93 (10th Cir. 1995) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1941)).

[14] *Id.* at 493.

[15] *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016).

[16] U.S. Const., amend. IV.

[17] *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).

punishment). Accordingly, Plaintiffs fail to state a claim against Defendants for violations of the Fourth and Eighth Amendments, leaving only Plaintiffs' Fourteenth Amendment claims.

*A. Section 1983 Official-Capacity Claims*

Plaintiffs assert § 1983 claims against Defendants in their official capacities. Defendants argue the Eleventh Amendment bars these claims. "The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."[18] "The party asserting jurisdiction bears the burden of proving that sovereign immunity has been waived."[19] Neither states nor state officials sued in their official capacities are considered "persons" within the meaning of § 1983.[20] Claims for damages against a state official in his or her official capacity are construed as claims against the state and are generally barred by the Eleventh Amendment.[21]

Plaintiffs correctly point out that exceptions to Eleventh Amendment immunity exist where a state consents to suit in federal court or where Congress has abrogated a state's sovereign immunity.[22] However, Oklahoma has not consented to suit in federal

---

[18] *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (internal quotation marks and citations omitted).

[19] *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1244 (10th Cir. 2012) (internal quotation marks and alteration omitted).

[20] *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

[21] *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985).

[22] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

court,[23] nor has Congress abrogated state sovereign immunity by creating a private right of action under § 1983.[24]

Plaintiffs' § 1983 claims against Defendants in their official capacities are barred by Eleventh Amendment immunity and are therefore dismissed without prejudice.[25] Two Defendants—the Oklahoma Department of Corrections and the Oklahoma Pardon and Parole Board—are named only in their official capacities since they are governmental entities. Accordingly, Plaintiffs' § 1983 official capacity claims against these Defendants are dismissed without prejudice in their entirety.

*B. Section 1983 Individual-Capacity Claims*

Plaintiffs also assert § 1983 claims against the remaining Defendants in their individual capacities for alleged violations of Plaintiffs' Fourteenth Amendment rights. The former Parole Board member Defendants assert that they are entitled to absolute immunity, and in the alternative, qualified immunity. The DOC Defendants and Defendant Governor Stitt invoke qualified immunity. The Court addresses Defendants' immunity defenses in turn.

---

[23] Okla. Stat. tit. 51, § 152.1(B) ("[I]t is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.").

[24] *See Will*, 491 U.S. at 64–71; *Muscogee Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1228 (10th Cir. 2010). Defendant also argues that Eleventh Amendment immunity is inapplicable to a state defendant's "proprietary" actions but cites no authority to support this proposition.

[25] *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla. v. Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds . . . must be without prejudice.").

*1. Absolute Immunity*

Parole board members "have absolute immunity 'from damages liability for actions taken in performance of the [b]oard's official duties regarding the granting or denying of parole.'"[26] This immunity derives from the absolute immunity accorded "judges and others performing judicial or 'quasi-judicial' functions."[27] Here, the former Parole Board member Defendants' relevant actions involved their commutation reviews and recommendations rather than their parole duties. Nonetheless, the former Parole Board member Defendants argue that absolute immunity should extend to their commutation duties as well. Although the Tenth Circuit has not specifically addressed this issue, the circuit courts of appeals that have considered this issue have both held that absolute immunity applies to parole board members' commutation reviews and recommendations.[28] In an unpublished case, the Tenth

---

[26] *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir. 1992) (quoting *Knoll v. Webster*, 838 F.2d 450, 451 (10th Cir. 1988)).

[27] *Id.* (citations omitted).

[28] *Lucien v. Preiner*, 967 F.2d 1166, 1167 (7th Cir. 1992) (holding that absolute immunity applies to the Illinois Prisoner Review Board's consideration of applications for executive clemency, which includes requests for commutation of sentence and pardons); *Anderson v. Boyd*, 714 F.2d 906, 909 (9th Cir. 1983) ("[A] parole board member's recommendations to the governor concerning his power to commute are sufficiently entwined with the exercise of that quasijudicial power to merit the protection of absolute immunity."). *See also Chambers v. Granholm*, No. 1:11-CV-42, 2011 U.S. Dist. LEXIS 11195, 2011 WL 447016, at *2 (W.D. Mich. Feb. 4, 2011) (granting absolute immunity to parole board members, where the "actions for which Plaintiff complains were taken by defendant parole board members in their quasi-judicial role of making a recommendation to the governor regarding an application for commutation"); *Goff v. Rousey*, No. 4:16-CV-00807, 2017 U.S. Dist. LEXIS 159930, 2017 WL 4295257, at *3 (E.D. Ark. Aug. 31, 2017) (granting absolute immunity to parole board members based on their denial of clemency application), *report & recommendation adopted*, No. 4:16-CV-00807, 2017 U.S. Dist. LEXIS 158576, 2017 WL 4295196 (E.D. Ark. Sept. 27, 2017).

Circuit found more broadly that members of a parole board "have absolute immunity for their actions within the scope of their state law duties."[29] The Court agrees that commutation reviews and recommendations made by the Parole Board pursuant to its legal duties are quasi-judicial functions warranting absolute immunity.

But Plaintiffs argue that absolute immunity isn't appropriate here because the Parole Board acted contra to state law, specifically Okla. Stat. tit. 57, § 332.2, the statute that lays out the Parole Board's commutation procedures. Plaintiffs argue that re-docketing Anderson's second application for commutation within the three-year period and withholding information regarding the re-docketing error should not be considered actions within the scope of the Parole Board's duties.[30]

But there is no allegation that any of the former Parole Board member Defendants themselves improperly re-docketed Anderson's application or intentionally withheld information regarding the application. The Amended Complaint instead alleges that a member of the Parole Board's administrative staff withheld from the Parole Board members the fact that Anderson's application was improperly re-docketed.[31] And even if the actions of the staff member are imputed to the Parole Board, the former Parole Board member Defendants would retain absolute immunity even if Parole Board rules required

---

[29] *Swisher v. Hamilton*, No. 91-3254, 1992 U.S. App. LEXIS 8552, *2 (10th Cir. Apr. 24, 1992). The Court cites unpublished decisions of the Tenth Circuit for their persuasive value, consistent with Tenth Cir. R. 32.1 and Fed. R. App. P. 32.1.

[30] *See* Okla. Admin. Code § 515:15-15-1 (Prohibiting, with limited exceptions, applicants from re-applying for commutation within three years of their last denial.).

[31] Pls.' Am. Compl. (Dkt. 2) ¶ 6.

them to reject Anderson's application as premature. Absolute immunity doesn't exist just to protect governmental actors from correct decisions; it also protects against even erroneous decisions, so long as the decision was an exercise of the legal authority to make such decisions. In sum, "[d]amages simply are not available against parole board members" for quasi-judicial actions taken in performance of the Parole Board's official duties.[32] The Parole Board's decision may well have been in error, and it undoubtedly led to grave and tragic consequences. But that awful result does not deprive the Parole Board members of the immunity they have been granted by law. Plaintiffs' individual-capacity § 1983 claims against the former Parole Board member Defendants are thus dismissed with prejudice.[33]

### 2. Qualified Immunity

The DOC Defendants and Defendant Governor Stitt are the only remaining Defendants potentially subject to liability under § 1983. These Defendants argue that they are entitled to qualified immunity. Qualified immunity protects government officials sued in their individual capacities "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

---

[32] *Russ*, 972 F.2d, at 303; *see also Swisher*, 1992 U.S. App. LEXIS 8552, at *2 ("Absolute immunity exists even if [members of a parole board] act erroneously in violation of constitutional rights, or in violation of state law." (citations omitted)). The Court cites unpublished decisions of the Tenth Circuit for their persuasive value, consistent with Tenth Cir. R. 32.1 and Fed. R. App. P. 32.1.

[33] *See Smith v. Glanz*, 662 F. App'x 595, 596 (10th Cir. 2016) (affirming dismissal with prejudice based on judicial immunity). The Court cites unpublished decisions of the Tenth Circuit for their persuasive value, consistent with Tenth Cir. R. 32.1 and Fed. R. App. P. 32.1.

...
...

person would have known."[34] Plaintiffs must therefore show (1) that Defendants' alleged conduct violated a constitutional right and (2) that the right was clearly established at the time of the alleged unlawful activity.[35] "Because there are cases where [the Court] can more readily decide the law was not clearly established before reaching the more difficult question of whether there has been a constitutional violation, [the Court] may exercise discretion in deciding which prong to address first."[36]

This is such a case, so the Court first examines whether the right was clearly established at the time of the alleged unlawful activity. "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[37] Ordinarily, to make a showing of clearly established law, "the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."[38] Clearly established law "must be 'particularized' to the facts of the case," and "should not be defined 'at a high level of generality.'"[39] "[T]his does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question regarding the illegality of the defendant's conduct beyond

---

[34] *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

[35] *See Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018).

[36] *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964 (10th Cir. 2016).

[37] *Id.* (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

[38] *Cox v. Wilson*, 971 F.3d 1159, 1171 (10th Cir. 2020) (internal quotation marks and citations omitted).

[39] *White v. Pauly*, 580 U.S. 73, 79 (2017) (citations omitted).

11

debate."[40] When a plaintiff relies on the weight of authority from other circuits to show that a right is clearly established, "the relevant inquiry is whether there is consensus regarding the existence of the constitutional right at issue."[41] "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances,"[42] but only in "obvious" cases.[43]

Plaintiffs argue that Defendants violated their clearly established Fourteenth Amendment substantive-due process rights under the state-created danger doctrine. "The state-created danger exception is a means by which a state actor, absent a special or custodial relationship between the victim and the State, might be held liable for an act of private violence."[44] While the Tenth Circuit has recognized the state-created danger doctrine, this alone is insufficient to overcome qualified immunity.[45] Plaintiffs must still either provide cases recognizing the violation of a constitutional right in a particularized factual context or otherwise establish that Defendants' conduct obviously violated clearly established law.

---

[40] *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (internal quotation marks and alterations omitted).

[41] *Irizarry v. Yehia*, 38 F.4th 1282, 1296 (10th Cir. 2022) (citing *Ullery v. Bradley*, 949 F.3d 1282, 1300 (10th Cir. 2020)).

[42] *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

[43] *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

[44] *Matthews v. Bergdorf*, 889 F.3d 1136, 1150 (10th Cir. 2018) (emphasis removed).

[45] *See Est. of Reat v. Rodriguez*, 824 F.3d 960, 967 (10th Cir. 2016) ("Though the state-created danger doctrine itself may be clearly established, it is far from clear that it applies to [the defendant's] conduct in this particular situation.").

Plaintiffs cite two cases, both from the Eighth Circuit, to meet this burden: *Glasgow v. Nebraska*[46] and *Kruger v. Nebraska*.[47] However, Plaintiffs appear to cite these cases only for the multi-factor test courts apply when considering the state-created danger doctrine. Plaintiffs make no argument that *Glasgow* or *Kruger* are factually similar to this case, nor are they. And in both cases, the Eighth Circuit concluded that the state-created danger doctrine did not apply. Even if *Glasgow* and *Kruger* were on point with the facts of this case, two cases from another circuit aren't nearly enough to create a clearly-established constitutional right.[48]

Plaintiffs also argue that Defendants violated clearly established law simply by disregarding the three-year reapplication rule found in Okla. Admin. Code § 515:15-15-1. But statutory or administrative violations aren't necessarily constitutional violations,[49] and Plaintiffs offer no authority to suggest that this administrative violation amounts to a constitutional violation.

Plaintiffs have failed to establish a violation of any clearly established constitutional right. Qualified immunity thus bars Plaintiffs' individual-capacity claims against

---

[46] 819 F.3d 436 (8th Cir. 2016).

[47] 820 F.3d 295 (8th Cir. 2016).

[48] *See Surat v. Klamser*, 52 F.4th 1261, 1279 (10th Cir. 2022) ("[T]o establish that a right is clearly established under the 'weight of authority' standard, a plaintiff must identify more than 'a handful of decisions . . . that lend support to his claim.'" (quoting *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009))).

[49] *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").

13

Defendant Governor Stitt and the DOC Defendants. Accordingly, Plaintiffs' individual-capacity § 1983 claims against them are dismissed with prejudice.[50]

To summarize, for the various reasons given above, all § 1983 claims against these Defendants are dismissed.

## II.   *Supplemental Jurisdiction*

Jurisdiction over Plaintiffs' state-law claims is governed by 28 U.S.C. § 1367, which permits, but does not require, the exercise of jurisdiction over the state-law claims.[51] Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right."[52] The Court "may decline to exercise supplemental jurisdiction" over a state-law claim if:

(1)   the claim raises a novel or complex issue of state law,

(2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)   the district court has dismissed all claims over which it has original jurisdiction, or

(4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.[53]

---

[50] If a court finds that a defendant is subject to qualified immunity, the court may dismiss with or without prejudice. *Breidenbach v. Bolish*, 126 F.3d 1288, 1294 (10th Cir. 1997); *Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000). In recognition that no further amendment to it is likely to clearly establish the law on point, the Court dismisses with prejudice.

[51] Section 1367(a) grants federal courts subject matter jurisdiction over "all other claims that are so related to" the federal question claim "that they form part of the same case or controversy."

[52] *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

[53] 28 U.S.C. § 1367(c).

While a discretionary decision, the Supreme Court has instructed that "in the usual case [where]," like here "all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."[54] This is because federal courts are to avoid "[n]eedless decisions of state law."[55] Moreover, courts often decline to exercise supplemental jurisdiction over state-law claims after dismissing a plaintiff's § 1983 claims.[56]

Here, the Court has dismissed all claims over which it has original jurisdiction, and the remaining state-law claims involve novel and complex issues of state law regarding whether various provisions of the Oklahoma Governmental Tort Claims Act exempt Defendants from liability. Accordingly, the Court declines to exercise supplemental

---

[54] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7; *see Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) ("Once a federal court no longer has federal claims to resolve, it 'should not ordinarily reach the plaintiff's state-law claims.'" (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006))); *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020); *Brooks v. Gaenzle,* 614 F.3d 1213, 1229 (10th Cir. 2010) (explaining that the Tenth Circuit has "generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction" (cleaned up)).

[55] *Gibbs*, 383 U.S. at 726. This principle is rooted in the design of our nation's federal structure, which recognizes that state courts are to be the driver of state law claims.

[56] *See, e.g.*, *Hoffschneider v. Marshall*, 2023 U.S. Dist. LEXIS 66146, 2023 WL 2955318, *20 (D. Colo. Apr. 14, 2023); *Gilmore v. Beveridge*, 2022 U.S. Dist. LEXIS 210016, 2022 WL 17082681, *18 (D. Kan. Nov. 17, 2022); *AKC v. Lawton Indep. Sch. Dist. No. 8*, 2014 U.S. Dist. LEXIS 165252, *12 (W.D. Okla. Nov. 26, 2014).

jurisdiction over Plaintiffs' state law claims, which are thus dismissed without prejudice to refiling in state court.[57]

## *Conclusion*

For the reasons given above, Defendants' Motions to Dismiss (Dkts. 32, 37, 47, 48) are **GRANTED**. Plaintiffs' § 1983 claims against Defendants are **DISMISSED**. The Court **DECLINES** supplemental jurisdiction over the remaining state-law claims, which are **DISMISSED** without prejudice.

**IT IS SO ORDERED** this 22nd day of February 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[57] *See Brooks*, 614 F.3d at 1230; *see also* 28 U.S.C. § 1367(d) (tolling statute of limitations on state-law claims for thirty days after a federal court declines supplemental jurisdiction).